IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO CATTLE GROWERS
ASSOCIATION; COALITION OF
ARIZONA/NEW MEXICO COUNTIES
FOR STABLE ECONOMIC GROWTH,

    Plaintiffs,

vs.                                                       Civ. No. 02-199 JP/LCS

UNITED STATES FISH AND WILDLIFE
SERVICE, an Agency of the United States
Department of the Interior; GALE NORTON,
Secretary of the Interior; MARSHALL P. JONES,
JR., Acting Director of the U.S. Fish and Wildlife
Service,

    Defendants,

and

CENTER FOR BIOLOGICAL DIVERSITY, a
nonprofit organization,

    Defendant/Intervenor.

## MEMORANDUM OPINION AND ORDER

On December 4, 2002, the United States Magistrate Judge, the Honorable Leslie Smith, held a settlement conference in this case. As a result of the settlement conference, Judge Smith entered an Order (Doc. No. 30) on December 10, 2002 which set forth a schedule with respect to the submission of any settlement agreement and any motion to approve a settlement agreement. In accordance with this schedule, the Plaintiffs and Defendants United States Fish and Wildlife Service, Gail Norton, and Marshall P. Jones, Jr. (Federal Defendants) filed Plaintiffs' and Federal Defendants' Joint Motion to Approve Settlement Agreement (Doc. No. 31). The motion to

approve the settlement agreement was opposed by the intervenor, Center for Biological Diversity, and is now fully briefed. Having reviewed the briefs and the relevant law, the Court finds that the motion to approve the settlement agreement should be denied.

A.  Background

The Plaintiffs allege in this lawsuit that the Federal Defendants violated the Endangered Species Act (ESA), the Administrative Procedures Act, and the National Environmental Policy Act (NEPA) when they issued the final rule designating critical habitat for the spikedace and loach minnow on April 25, 2000. In analyzing the potential economic effects of the critical habitat designations under §4(b)(2) of the ESA, the Defendant United States Fish and Wildlife Service (FWS) used an incremental baseline approach. Subsequent to the issuance of the final rule designating critical habitat for the spikedace and loach minnow, the Tenth Circuit Court of Appeals held that the incremental baseline approach is inconsistent with §4(b)(2) of the ESA. *See New Mexico Cattle Growers Ass'n v. United States Fish and Wildlife Service*, 248 F.3d 1277, 1285 (10th Cir. 2001). Consequently, the parties in this case agree that this matter should be remanded to the FWS so that the FWS can make a proper economic analysis under the ESA. The parties, however, disagree about which current critical habitat designations to vacate pending the remand proceedings and the Defendant/Intervenor Center for Biological Diversity (CBD) disagrees with the Plaintiffs and the Federal Defendants about the time frame for concluding the remand proceedings.

With the exception of the critical habitat designation of the area known as Complex 3, the Plaintiffs and the Federal Defendants agree that the April 25, 2000 final rule designating critical habitat for the spikedace and loach minnow should be vacated pending the completion of the new

economic analysis upon remand. The Plaintiffs argue that the final rule designating critical habitat should also be vacated with respect to Complex 3. The Federal Defendants and the CBD argue that the final rule designating critical habitat should remain in effect for Complex 3 pending the completion of the new economic analysis. The CBD further argues that the entire final rule designating critical habitat should remain in effect pending the completion of the new economic analysis.

The Plaintiffs and Federal Defendants also agree that the FWS should be allowed until October 2006 (or until January 2007 if the FWS determines that an environmental impact statement (EIS) is required under NEPA) to promulgate a new proposed rule designating critical habitat for the spikedace and loach minnow, and until October 2007 (or until January 2008 if the FWS determines that an EIS is required) to promulgate a final rule. The CBD argues that this time frame is too lengthy and places the spikedace and the loach minnow at significant risk. The CBD proposes a much shorter schedule that would begin when the FWS starts to work on the critical habitat designation and not immediately upon the Court's ruling.

B. Discussion

    1. Standard for Approving a Settlement Agreement

Generally, the district court's only options are to either approve or deny a settlement agreement as a whole. *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991)(citing *Officers for Justice v. Civil Service Com'n of the City and County of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)). In determining whether to approve a settlement agreement, "the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest. The court also has the duty to decide whether

the decree is fair, adequate, and reasonable before it is approved." *Id*. (citing *United States v. City of Miami, Fla.*, 664 F.2d 435, 440-41 (5th Cir. 1981)).  It is not the duty of the district court in deciding whether to approve a settlement agreement to "inquire into the precise legal rights of the parties nor [to] reach and resolve the merits of the claims or controversy...." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984).  However, the district court should determine if the settlement agreement is consistent with the purpose of the statute which the settlement agreement is intended to enforce. *Id*. at 1125 (quoting *System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 651 (1961)).

    2.  Complex 3

The Plaintiffs and the Federal Defendants do not agree as to the status of the critical habitat designation of Complex 3 pending the remand proceedings.  The Plaintiffs and the Federal Defendants as well as the CBD are, in essence, asking the Court to resolve the substantive issue of whether Complex 3 should, except for the pending economic analysis, be designated as a critical habitat.  It is not the Court's place to make that determination in the context of a motion to approve a settlement agreement.  Moreover, it is questionable that there is in fact a settlement agreement between the Plaintiffs and the Federal Defendants when they dispute the term of the settlement agreement which addresses Complex 3.

    3.  The Effect of the CBD's Lack of Consent

Although not raised in the briefs, the issue of the effect of the CBD's lack of consent as a defendant/intervenor to the portion of the proposed settlement agreement actually agreed to by the Plaintiffs and Federal Defendants supports a denial of the motion to approve the settlement

agreement. "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor." *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986). A nonconsenting intervening defendant who asserts his or her rights in the form of an objection, as opposed to a claim, can also block the approval of a settlement agreement. *See United States v. City of Hialeah*, 140 F.3d 968, 978-79 (11th Cir. 1998)(discussing *White v. Ala.*, 74 F.3d 1058 (11th Cir. 1996) and it application of *City of Cleveland*). *See also Fouts v. Harris*, 88 F.Supp.2d 1351, 1352-53 (S.D. Fla. 1999), *affirmed by Chandler v. Harris*, 529 U.S. 1084 (2000)(denying motion to approve settlement agreement when the nonconsenting intervening Defendants' objectives in defending the lawsuit would be completely frustrated by the proposed settlement agreement).

In this case, although the CBD agrees that a remand is appropriate to conduct a proper economic analysis, the CBD's purpose in defending this lawsuit is to ensure that the current critical habitat designations for the spikedace and loach minnow remain in effect so as to provide the spikedace and loach minnow the most protection they can receive under the ESA. *See* Applicant-In-Intervention Center for Biological Diversity's Proposed Answer to Complaint at ¶2 (Doc. No. 15), filed June 20, 2002 (*de facto* answer by CBD). The Plaintiffs and Federal Defendants' agreement (except for Complex 3) to vacate the critical habitat designations pending the completion of the remand proceedings directly affects the CBD's defense that the current critical habitat designations should remain in effect. Moreover, the Plaintiffs and Federal

Defendants' agreed time frame to complete the remand proceedings directly affects the CBD's defense by leaving the spikedace and the loach minnow without the protections of a critical habitat designation for several years and, thereby, increasing the risk of destruction of critical habitat. The proposed settlement agreement adversely affects the legal rights of the CBD in defending this lawsuit.

C. Conclusion

The Court concludes that the proposed settlement agreement is not fair, adequate or reasonable for several reasons. First, the Complex 3 issue is substantive in nature and should not be addressed in the context of a motion to approve a settlement agreement. Second, it is doubtful that there is a true settlement agreement since the Plaintiffs and Federal Defendants do not agree as to the status of the current critical habitat designation of Complex 3. Third, the proposed settlement agreement will adversely affect the legal rights of the CBD in defending this lawsuit. For these reasons, the proposed settlement agreement will not be approved.

IT IS ORDERED that Plaintiffs' and Federal Defendants' Joint Motion to Approve Settlement Agreement (Doc. No. 31) is denied.

_____
CHIEF UNITED STATES DISTRICT JUDGE