# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO CATTLE GROWERS
ASSOCIATION, and COALITION OF
ARIZONA/NEW MEXICO COUNTIES
FOR STABLE ECONOMIC GROWTH,

        Plaintiffs,

vs.                                                              No. CIV 02-0199 JB/LCS

UNITED STATES FISH AND WILDLIFE
SERVICE, an Agency of the United States
Department of the Interior; GALE NORTON,
Secretary of the Interior; and MARSHALL P.
JONES, JR., Acting Director of the U.S. Fish
and Wildlife Service,

        Federal Defendants,

CENTER FOR BIOLOGICAL DIVERSITY,

        Defendant-Intervenor.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Strike Exhibits in

Support of Federal Defendants' Motion and Memorandum in Support of a Voluntary Remand, filed

November 17, 2003 (Doc. 51); and (ii) the Plaintiffs' Motion to Strike Exhibits in Support of Center

for Biological Diversity's Response to Federal Defendants' Motion for Voluntary Remand, filed

November 24, 2003 (Doc. 55).  The primary issue is whether the Court's review of the agency action,

and the decision whether to vacate the existing rule, is limited to the administrative record.  Because

the Court finds that an invalid agency rule should generally be vacated and remanded to the agency,

it does not believe it is necessary to consider information outside the administrative record.

Moreover, in light of the technical nature of the issues involved in this case, and the fact that the Plaintiffs have not fully responded to the extra-record material submitted by the Defendants, the Court believes that it is most appropriate for the agency to first consider the question of which portions of the rule should remain designated as critical habitat.  Accordingly, the Court will grant the motions to strike with respect to the questions whether to remand to the agency and whether to vacate the rule in whole or in part.  Because the administrative record rule does not appear to apply to the question whether to impose a schedule on remand, the Court will deny the motions to strike with respect to that issue.  The Court's ruling is subject to the caveat that, if the Court accepts the Defendants' argument that it should exercise its equitable powers to keep some or all of the invalid rule in place, the Court will grant the motions to strike only as to the remand question and deny the motions to strike with respect to the vacatur and scheduling issues.

## BACKGROUND

On April 25, 2000, the United States Fish and Wildlife Service ("USFWS") issued its Final Rule designating critical habitat for the spikedace and loach minnow.  The USFWS analyzed the potential economic effects of this designation by using an "incremental baseline approach," in which the agency assesses the economic impacts of the designation only to the extent that those impacts are above and beyond the economic impacts that flow from the listing of the species under the ESA. After the USFWS issued its Final Rule, the United States Court of Appeals for the Tenth Circuit held that the "incremental baseline approach" is inconsistent with the ESA.  See New Mexico Cattle Growers Ass'n v. United States Fish and Wildlife Service, 248 F.3d 1277, 1285 (10th Cir. 2001). The Tenth Circuit concluded that "Congress intended that the FWS conduct a full analysis of all of the economic impacts of a critical habitat designation, regardless of whether those impacts are

attributable co-extensively to other causes.  Thus, we hold the baseline approach to economic analysis is not in accord with the language or intent of the ESA."  Id.  Thus, the Tenth Circuit "expressly rejected" the baseline approach to economic analysis in critical habitat designations.  Id.

On February 20, 2002, the Plaintiffs brought this action challenging the existing Final Rule, which the Federal Defendants had promulgated, designating critical habitat for the threatened spikedace and loach minnow.  See Complaint, filed February 20, 2002 (Doc. 1).  Among other things, the Plaintiffs allege that the USFWS' designation of critical habitat for the spikedace and loach minnow unlawfully relied upon the "baseline approach" in its required analysis of the economic impacts of critical habitat designation.

The Federal Defendants concede that the economic analysis in support of the critical habitat designations for the spikedace and loach minnow violates the Tenth Circuit's holding in New Mexico Cattle Growers Ass'n. v. United States Fish and Wildlife Service.  See Federal Defendants' Motion and Memorandum in Support of Voluntary Remand at 16 (stating that the Court should remand this matter to the USFWS for "further proceedings not inconsistent with the holding in New Mexico Cattle Growers.").  Indeed, all parties concur that the Tenth Circuit's decision in New Mexico Cattle Growers Ass'n. v. United States Fish and Wildlife Service is dispositive of the merits of Plaintiffs' ESA argument that the agency violated the ESA by relying on the "baseline approach" in promulgating the Final Rule.  That conclusion is dispositive of this case and renders all of the Plaintiffs' other claims moot.  Neither the Plaintiffs nor the Defendant-Intervenor contests this conclusion.  Therefore, the focus of the Federal Defendants' Motion for Voluntary Remand, and all parties' related briefing, was on the appropriate remedy.  The Federal Defendants made this point clear in the Motion itself: "Because Federal Defendants will not be contesting the merits of Plaintiffs'

challenge to the Final Rule, the only issues among the Parties involve the appropriate remedy." Motion for Voluntary Remand at 3.

While acknowledging the legal defect in its critical habitat designation, the USFWS nevertheless attempts to create an exception and enforce the critical habitat designation for Complex 3 ("Tonto Creek"). Complex 3 includes approximately fifty-three miles of Tonto, Greenback, and Rye Creeks in Gila County, Arizona. See Final Designation of Critical Habitat for Spikedace and Loach Minnow, 65 Fed. Reg. 24328, 24367 (April 25, 2000). In support of the Federal Defendants' request to except Complex 3 from their motion to vacate the existing Final Rule designating critical habitat for the threatened spikedace and loach minnow, the Federal Defendants attempt to introduce, and rely upon, the Declaration of Marshall Jones, Deputy Director of USFWS. Attached to Jones' thirty-four page declaration are sixteen additional attachments, including declarations, tables, maps, and excerpts from Biological Opinions and various Management Plans, totaling approximately 200-250 pages of extra-record materials. Jones' declaration and some of the sixteen attachments are not within the Administrative Record in this case. The Federal Defendants urge the Court to exclude Complex 3 from vacatur of the Final Rule to ensure protection of the two species. They contend that, compared to the other complexes designated as critical habitat by the existing Final Rule, Complex 3 would not have adequate protection during the remand period.

The Center for Biological Diversity ("CBD"), the Defendant-Intervenor in this case, does not contest the need to correct the flawed economic analysis which accompanied these species' critical habitat designation, and therefore does not oppose the requested voluntary remand for that limited purpose. The CBD opposes, however, the USFWS' additional request that the Court vacate the current critical habitat pending completion of the remand proceedings. In support of the CBD's

request that the Court not vacate the existing Final Rule designating critical habitat for the threatened spikedace and loach minnow at this time, the CBD attempts to introduce, and rely upon, the Declaration of Martin Taylor, a Conservation Biologist that the CBD employs, as well as the Declaration of Keiran Suckling, the CBD's Executive Director.  Attached to Taylor's fourteen page declaration are sixteen additional attachments, including excerpts from Biological Opinions, various management decisions, and scientific articles, totaling approximately 100 pages of extra-record materials.  Attached to Suckling's nine page declaration are six additional attachments, totaling approximately 75 pages.  Finally, the CBD includes five other exhibits consisting of approximately 50 pages.

The contents of the Administrative Record include "all documents that Federal Defendants have produced that predate the date of the final rule (April 25, 2000)."  The Parties' Stipulation Concerning the Administrative Record at 1, filed October 2, 2003 (Doc. 47).  Neither the Federal Defendants nor the CBD moved to supplement the Administrative Record with this additional information.

## PROCEDURAL BACKGROUND

The Plaintiffs, New Mexico Cattle Growers Association and the Coalition of Counties for Stable Economic Growth, move the Court to strike all exhibits in support of the Federal Defendants' motion for voluntary remand.  The Plaintiffs oppose the introduction of, and reliance upon, any exhibits in support of the Federal Defendants' motion that are outside of the administrative record. The Plaintiffs urge the Court to strike these documents, and all references to them in support of the Federal Defendants' request to except Complex 3 from their motion to vacate the existing Final Rule designating critical habitat for the threatened spikedace and loach minnow.

In a separate motion, the Plaintiffs move to strike all exhibits in support of the Center for Biological Diversity's Response to the Federal Defendants' motion for voluntary remand.  The Plaintiffs do not object to Exhibits B, D, E, and G.  The Plaintiffs contend that, if the Court does not strike these documents, the Plaintiffs request leave of the Court to filed extra-record exhibits from their own experts.  The Plaintiffs contend that, unless the Court allows such counter evidence, submission of this extra-record evidence is highly prejudicial to the Plaintiffs.  The Plaintiffs states that, if the Court allows introduction of these documents, the Court should also allow the Plaintiffs to introduce evidence to show why Complex 3, or any other portion of the Final Rule, should not be left in place pending remand.

## <u>LEGAL STANDARDS FOR JUDICIAL REVIEW<br>OF AN ADMINISTRATIVE DECISION</u>

The Federal Defendants agree that the merits of the Endangered Species Act claim which forms the threshold issue in Federal Defendants' motion for voluntary remand is subject to review pursuant to the Administrative Procedure Act ("APA").  <u>See</u>, <u>e.g.</u>, <u>Wyoming Farm Bureau Federation v. Babbitt</u>, 199 F.3d 1224, 1231 (10th Cir. 2000)(stating that the APA, 5 U.S.C. § 706, governs review of ESA claims); <u>Village of False Pass v. Clark</u>, 733 F.2d 605, 609-10 (9th Cir. 1984)("Because the ESA contains no internal standard of review, section 706 of the [APA] governs review of the Secretary's actions" and "the normal 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard applies.").  In reviewing an agency decision under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Pursuant to the APA, judicial review of the merits of a challenge to an agency action is based on a "review [of] the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "record" referenced in § 706 is generally limited to the Administrative Record that was before the agency when the agency rendered its decision. See Florida Power and Light Co. v. Lorion, 470 U.S. 729, 743 (1985)("'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'")(quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). In Franklin Savings Assn. v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991), the Tenth Circuit held that review of agency actions "shall be confined to the administrative record" and that "[a] reviewing court may go outside of the administrative record only for limited purposes." "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993). "Judicial review of an agency decision is generally limited to review of the administrative record." Custer County Action Association v. Garvey, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001)(citing Federal Power Commission v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 331 (1976)).

The Supreme Court of the United States has emphasized the Administrative Procedure Act's strict limitations imposed on judicial review:

> We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded . . . for further consideration."

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 549 (1978)(quoting Camp v. Pitts, 411 U.S. at 143. "The task of the reviewing court is to apply the

appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. at 743-44 (citation omitted).  The reviewing court must confine its judicial review under the APA, 5 U.S.C. § 706, to the agency record or such portions of its which the parties may cite, and the court may not admit additional evidence. <u>See</u> <u>Roberts v. Morton</u>, 549 F.2d 158, 160 (10th Cir. 1976)(citing <u>Nickol v. United States</u>, 501 F.2d 1389, 1390 (10th Cir. 1974)).

"Judicial review under these standards is generally based on the administrative record that was before the agency at the time of its decision . . . , and reviewing courts may not rely on litigation affidavits that provide post hoc rationalizations for the agency's action." <u>Lewis v. Babbitt</u>, 998 F.2d 880, 882 (10th Cir. 1993)(citing <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 419 (1971)).  "[An] agency's action must be reviewed on the basis articulated by the agency and on the evidence and proceedings before the agency at the time it acted.  Aggressive use of extra-record materials also would run directly counter to the admonitions of the Supreme Court[.]" <u>American Min. Congress v. Thomas</u>, 772 F.2d 617, 626 (10th Cir. 1985)(citing <u>Deukmejian v. Nuclear Regulatory Commission</u>, 751 F.2d 1287, 1323-1326 (D.C. Cir.1984)).

The purpose of the Administrative Record rule during judicial review of the merits of an agency action is to prevent the Court from substituting its judgment for that of the agency:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.
>
> * * * *

The APA's arbitrary and capricious standard is a deferential one; administrative

determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency.

Utahns for Better Transp. V. U.S. Dept. of Transp., 305 F.2d 1152, 1164 (10th Cir. 2002)(citations omitted). The Tenth Circuit has articulated its policy for refusing to consider extra-record materials during judicial review of an agency decision:

> The policy behind such a rule, i.e., refusal to consider issues not presented to the agency, is sound, for we may not substitute our judgment for that of the agency on matters where the agency has not had an opportunity to make a factual record or apply its expertise. It is the function of the court to review agency action based on the record before the agency unless exceptional circumstances justify use of extra-record materials.

New Mexico Environmental Improvement Division v. Thomas, 789 F.2d 825, 835 (10th Cir. 1986)(citation omitted). "The integrity of the administrative process must be judged by what took place in the administrative proceedings as reflected on the administrative record unaided by affidavit proof in the reviewing court." Garvey v. Freeman, 397 F.2d 600, 610-11 (10th Cir. 1968)(citations omitted). "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 792 (D.D.C. Cir. 1984). The record that was before the administrative agency, not evidence or arguments that the litigants adduce after the fact, must frame the court's review. See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1576 (10th Cir. 1994). See id. at 1575 ("[T]he grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record.").

The Tenth Circuit has acknowledged five limited exceptions to the general rule that judicial review of an agency decision is generally limited to review of the administrative record. See American Min. Congress v. Thomas, 772 F.2d at 626. First, "that the agency action is not adequately

explained and cannot be reviewed properly without considering the cited materials." Id. (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 420.  Second, "that the record is deficient because the agency ignored relevant factors it should have considered in making its decision." American Min. Congress v. Thomas, 772 F.2d at 626 (citing Hiatt Grain & Feed, Inc. v. Bergland, 446 F. Supp. 457, 467 (D. Kan. 1978), aff'd on other grounds, 602 F.2d 929 (10th Cir. 1979), cert. denied, 444 U.S. 1073 (1980)).  Third, "that the agency considered factors that were left out of the formal record."  American Min. Congress v. Thomas, 772 F.2d at 626 (citing Environmental Defense Fund, Inc. v. Blum, 458 F. Supp. 650, 661 (D.D.C. 1978)).  Fourth, "that the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues."  American Min. Congress v. Thomas, 772 F.2d at 626 (citing Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977)).  And fifth, "that evidence coming into existence after the agency acted demonstrates that the actions were right or wrong."  American Min. Congress v. Thomas, 772 F.2d at 626 (citing American Petroleum Institute v. EPA, 540 F.2d 1023, 1034 (10th Cir. 1976), cert. denied, 430 U.S. 922 (1977)).[1]

---

[1] Although the parties extensively briefed the issue of injunctive relief, the Court does not believe that this case involves that issue.  The parties did not cite any authority to support the assertion that the decision whether to vacate an invalid agency rule implicates principles of injunctive relief.  And while the Court recognizes that the Defendants urge the Court to exercise its equitable powers, the Court does not believe that such an exercise would necessarily require application of the specific rules governing injunctive relief.  Thus, the Court declines to adopt the Defendants' analogy to injunctive relief and does not discuss the law on injunctive relief in this opinion.

**LEGAL ANALYSIS**

I.    **THE COURT WILL APPLY THE ADMINISTRATIVE RECORD RULE TO THE DECISION WHETHER TO VACATE ALL OR PART OF THE INVALID CRITICAL HABITAT DESIGNATION.**[2]

The Plaintiffs contend that Jones' declaration and its sixteen attachments, and Taylor's and Suckling's declarations and their twenty-two exhibits, cannot be included within the Administrative Record in this case.  The Plaintiffs argue that, when the Court determines the lawfulness of the Defendants' attempt to exclude all or part of the critical habitat designation from vacatur, its review is limited to the Administrative Record.  The Plaintiffs assert that the extra-record documentation that the Federal Defendants and CBD offer does not meet any of the exceptions to the general rule that judicial review of an agency decision is generally limited to review of the Administrative Record.

The Defendants contend that the Plaintiffs' motions to strike are fundamentally flawed because they fail to recognize that the Administrative Record rule applies only to judicial review of the legality of the federal agency action at issue in this litigation – the USFWS' Final Rule designating critical habitat for the spikedace and loach minnow.  The Defendants assert, however, that the legal merits of the federal agency action is not at issue here.  They argue that the focus of the motion for voluntary remand and exhibits in support is not on the legal merits of the challenged agency action, but on the terms of the remand from the Court to the federal agency and whether the Court should exercise its equitable discretion to leave any portion of the rule in place during the interim period.

The Court believes that the language of the APA provides support for the Plaintiffs' position.

---

[2] Because all parties agree that the Federal Defendants violated the ESA by using the "baseline approach" to economic analysis, the Court need not undertake an independent review of the validity of the critical habitat designation.  Such a question, however, falls squarely within the administrative record rule, and the Court would be bound to consider only that material that the agency had before it if the Court were analyzing the validity of the critical habitat designation.

Section 706 states that "[t]he reviewing court <u>shall</u> . . . hold unlawful <u>and set aside</u> agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]  In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party."  5 U.S.C. § 706(2)(A)(emphasis added).  As noted earlier in this opinion, the Supreme Court and Tenth Circuit have interpreted this statute to refer to the administrative record.  Thus, the plain language of the statute indicates two things: (i) that the Court should base its decision to set the agency action aside on the administrative record; and (ii) the Court may not have discretion to consider the equities involved if the Court determines that the critical habitat designation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

None of the five limited exceptions to the administrative record rule apply in this case.  The Administrative Record can adequately explain USFWS' decision making process regarding the alleged importance of Complex 3.  <u>See</u> Final Designation of Critical Habitat for Spikedace and Loach Minnow, 65 Fed. Reg. 24328, 24332 (April 25, 2000)(providing justification for the alleged importance of Complex 3).  Furthermore, Jones', Taylor's, and Suckling's declarations do not provide references to the Administrative Record nor rely upon documents within the Administrative Record.  Taylor's declaration references fourteen exhibits after the date of the Final Rule (April 25, 2000).  Taylor's declaration references fourteen exhibits after the date of the Final Rule (April 25, 2000).  Jones' declaration, the exhibits attached to Taylor's declaration, and those paragraphs in Taylor's declaration referencing these exhibits, are a post hoc rationalization, because they provide a justification – alleged absence of regulatory mechanisms to protect the areas associated with Complex 3 in the absence of designated critical habitat – for excepting Complex 3, which is not set forth in the administrative record.  The Federal Defendants and CBD cannot justify their extra-record

documentation under the first exception.

The Federal Defendants and CBD have not set forth any arguments that they proffer the extra-record documentation because the USFWS ignored or failed to consider relevant factors.  As noted above, Taylor's declaration references fourteen exhibits issued after the date of the Final Rule (April 25, 2000).  The USFWS could not ignore relevant factors that came to light after the USFWS made its decision to designate critical habitat.

The Federal Defendants and CBD have also not set forth any arguments that they proffer the extra-record documentation because the USFWS considered factors that were left out of the formal record.  The Federal Defendants and CBD do not proffer the extra-record documentation to assist the Court in understanding certain issues or making the case less complex.  The documents do not seek to explain or to clarify the Administrative Record.  The Federal Defendants and CBD do not set forth any arguments that they proffer the extra-record documentation because evidence came into existence after the USFWS acted.  The Federal Defendants' extra-record documentation refers to information revealed, and to actions taken, before the USFWS' decision in this case.  And even though each of the exhibits and attachments that CBD offers were issued subsequent to the Final Rule's date, each exhibit purportedly relies upon information previously available to the USFWS.

The extra-record documentation that the Federal Defendants and CBD offer does not meet any of the exceptions to the general rule that judicial review of an agency decision is generally limited to review of the administrative record.  The Court will strike these documents and all references to them in the Federal Defendants' Motion and Memorandum in Support of a Voluntary Remand and in the CBD's Response to the Federal Defendants' Motion for Voluntary Remand and Partial Vacatur.

The Federal Defendants argue that the evidence the Court will need to make determinations on these remand and remedy issues extends beyond information that the agency addressed in the Administrative Record for the Final Rule itself.  The Federal Defendants assert that the Court must afford them an opportunity to provide the Court with information on the procedures and time required to remedy the legal deficiency in the Final Rule so that the Court can fashion a proper remand order.  The Federal Defendants contend that the Court must allow the agency to adduce evidence concerning the present harm, or lack of harm, to the species should the Court issue an injunction against the Final Rule.

The Court believes, however, that the Administrative Record contains information that will assist the Court in determining potential harm to the species in the event of partial or complete vacatur.  Information regarding the unique circumstances surrounding Complex 3 is available in the record.  The only event that would make it necessary to go outside the record is if the Court determines that it has discretion, and chooses to use the discretion, to weigh the equities in this case.

II.   **THE COURT WILL CONSIDER EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD IF IT CHOOSES TO IMPLEMENT A REMAND SCHEDULE.**

The Federal Defendants request that the Court consider its budgetary and other constraints in crafting a workable schedule for the remand period.  The CBD objects to the Federal Defendants' proposed schedule and argues that any schedule should be shorter than the Federal Defendants' request.  The Court does not believe that the administrative record rule binds it in this determination.  The APA does not speak to this issue.  And while the parties cite case law to support their various arguments on the merits of the scheduling issue, they have not provided the Court with authority to support the proposition that such an exercise of equitable powers would be constrained by the

-14-

administrative record rule.  Should the Court choose to implement a remand schedule, it will consider all evidence that the parties have provided.  Accordingly, the motions to strike are denied as to this issue.

**IT IS ORDERED** that the documents and all references to them in support of the Federal Defendants' request to except Complex 3 (Tonto Creek) from their motion to vacate the existing Final Rule designating critical habitat for the threatened spikedace and loach minnow are stricken. The documents and all references to them in support of the CBD's opposition to the Federal Defendants' motion to vacate the existing Final Rule designating critical habitat for the threatened spikedace and loach minnow are stricken.  The Court will not strike any exhibits intended to address the issue of a remand schedule.  Additionally, the Court will deny the motions to strike on a limited basis in the event it chooses to exercise discretion on the vacatur issue.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Lee E. Peters
Hubert & Hernandez, P.A.
Las Cruces, New Mexico

– and –

Karen Budd-Falen
Brandon L. Jensen
Vicky Demshar
Budd-Falen Law Offices, P.C.
Cheyenne, Wyoming

     *Attorneys for the Plaintiffs*

Geoffrey B. Hickcox
Matthew Kenna
Kenna & Hickcox P.C.
Durango, Colorado

     *Attorneys for the Intervenor-Defendant*

Andrew A. Smith
United States Department of Justice
Environmental and Natural Resources Section
Albuquerque, New Mexico

     *Attorneys for the Federal Defendants*