# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO CATTLE GROWERS
ASSOCIATION, and COALITION OF
ARIZONA/NEW MEXICO COUNTIES
FOR STABLE ECONOMIC GROWTH,

   Plaintiffs,

vs.              No. CIV 02-0199 JB/LCS

UNITED STATES FISH AND WILDLIFE
SERVICE, an Agency of the United States
Department of the Interior; GALE NORTON,
Secretary of the Interior; and MARSHALL P.
JONES, JR., Acting Director of the U.S. Fish
and Wildlife Service,

   Federal Defendants,

CENTER FOR BIOLOGICAL DIVERSITY,

   Defendant‑Intervenor.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Federal Defendants' Motion and
Memorandum in Support of a Voluntary Remand, filed October 17, 2003 (Doc. 48).  The primary
issue is whether the Court should vacate, in whole or in part, the Final Rule designating critical
habitat for the spikedace and loach minnow and remand this matter to the United States Fish and
Wildlife Service ("USFWS") to develop and promulgate new proposed and final rules designating
critical habitat for these two fish species.  The Court held a hearing on this matter on June 1, 2004.
The Court finds that the United States Court of Appeals for the Tenth Circuit's invalidation of the
"incremental baseline approach" applies to all complexes within the critical habitat designation,

including Complex 3, and further finds that the existing Final Rule violates the Endangered Species Act ("ESA").  Accordingly, the Court will vacate the existing Final Rule and remand this matter to the USFWS to reconsider the economic effects of designating critical habitat for the spikedace and loach minnow before developing and promulgating new proposed and final critical habitat rules for the two fish species.  The Court will not impose a specific deadline by which the USFSW must complete its re-designation.

## PROCEDURAL BACKGROUND

On April 25, 2000, the USFWS issued its Final Rule designating critical habitat for the spikedace and loach minnow.  The USFWS analyzed the potential economic effects of this designation by using an "incremental baseline approach," in which the agency assesses the economic impacts of the designation only to the extent that those impacts are above and beyond the economic impacts that flow from the listing of the species under the ESA.  After the USFWS issued its Final Rule, the Tenth Circuit held that the "incremental baseline approach" is inconsistent with the ESA. See New Mexico Cattle Growers Ass'n v. United States Fish and Wildlife Service, 248 F.3d 1277, 1285 (10th Cir. 2001).  The Tenth Circuit concluded that "Congress intended that the FWS conduct a full analysis of all of the economic impacts of a critical habitat designation, regardless of whether those impacts are attributable co-extensively to other causes.  Thus, we hold the baseline approach to economic analysis is not in accord with the language or intent of the ESA." Id.  Thus, the Tenth Circuit "expressly rejected" the baseline approach to economic analysis in critical habitat designations. Id.

On February 20, 2002, the Plaintiffs brought this action challenging the existing Final Rule, which the Federal Defendants had promulgated, designating critical habitat for the threatened

spikedace and loach minnow.  See Complaint, filed February 20, 2002 (Doc. 1).  Among other things, the Plaintiffs allege that the USFWS' designation of critical habitat for the spikedace and loach minnow unlawfully relied upon the "baseline approach" in its required analysis of the economic impacts of critical habitat designation.

The Federal Defendants concede that the economic analysis in support of the critical habitat designations for the spikedace and loach minnow violates the Tenth Circuit's holding in New Mexico Cattle Growers Ass'n. v. United States Fish and Wildlife Service.  See Federal Defendants' Motion and Memorandum in Support of Voluntary Remand at 16 (stating that the Court should remand this matter to the USFWS for "further proceedings not inconsistent with the holding in New Mexico Cattle Growers.").  Indeed, all parties concur that the Tenth Circuit's decision in New Mexico Cattle Growers Ass'n. v. United States Fish and Wildlife Service is dispositive of the merits of Plaintiffs' ESA argument that the agency violated the ESA by relying on the "baseline approach" in promulgating the Final Rule.  That conclusion is dispositive of this case and renders all of the Plaintiffs' other claims moot.  Neither the Plaintiffs nor the Defendant-Intervenor contests this conclusion.  Therefore, the focus of the Federal Defendants' Motion for Voluntary Remand, and all parties' related briefing, is on the appropriate remedy.  The Federal Defendants made this point clear in the Motion itself: "Because Federal Defendants will not be contesting the merits of Plaintiffs' challenge to the Final Rule, the only issues among the Parties involve the appropriate remedy." Motion for Voluntary Remand at 3.

While acknowledging the legal defect in the critical habitat designation, the Federal Defendants contend that the Court maintains equitable discretion to fashion a remedy that weighs the interests of all parties involved in this case.  The Federal Defendants move the Court to remand this

matter to the USFWS and vacate the existing Final Rule designating critical habitat for the spikedace and loach minnow with the exception of Complex 3.   Complex 3 includes approximately fifty-three miles of Tonto, Greenback, and Rye Creeks in Gila County, Arizona.   <u>See</u> Final Designation of Critical Habitat for Spikedace and Loach Minnow, 65 Fed. Reg. 24328, 24367 (April 25, 2000).  The Federal Defendants urge the Court to exclude Complex 3 from vacatur of the Final Rule to ensure protection of the two species.  They contend that, compared to the other complexes designated as critical habitat by the existing Final Rule, Complex 3 would not have adequate protection during the remand period.[1]

In their response to the Federal Defendants' motion, the Plaintiffs support the Federal Defendants' request for a voluntary remand, but oppose the Federal Defendants' attempts to exclude Complex 3 from vacatur.  The Plaintiffs contend that the Court should vacate the critical habitat designation in its entirety, and that no factual or legal basis exists for leaving the critical habitat designation for Complex 3 in place pending the formulation of a new and revised Final Rule by the USFWS.  Plaintiffs contend that excluding Complex 3 from vacatur of the existing Final Rule directly contravenes the Tenth Circuit precedent that invalidated the "baseline approach" used to formulate the existing Final Rule.

In its response to the Federal Defendants' motion, the Defendant-Intervenor, the Center for

---

[1] At the hearing on this motion, the Federal Defendants changed their requested relief slightly.  They requested that the Court delay the vacatur of the Final Rule until some future date when the USFWS issues a new rule.  Until that time, the Federal Defendants requested that the Court enjoin the implementation of the critical habitat designation with respect to all complexes except Complex 3.  <u>See</u> Transcript of Motion Hearing at 76:12 to 77:5 (June 1, 2004).

The Court's citations to the transcript refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

Biological Diversity ("CBD"), does not dispute the need to correct the flawed economic analysis that the USFWS used in formulating these species' critical habitat designation and therefore does not oppose the requested voluntary remand for that limited purpose. The CBD opposes, however, the USFWS' additional request that the Court vacate any portion of the current critical habitat pending completion of the remand proceedings. The CBD argues that the critical habitat designation should remain in place during the re-designation. To support this contention, the CBD points out that critical habitat designation is mandatory under the ESA and that the economic analysis only relates to the USFWS' discretionary authority to exclude portions of the critical habitat when the economic cost outweighs the benefit for the listed species.

## LEGAL ANALYSIS

### I.   THE ADMINISTRATIVE PROCEDURE ACT GOVERNS ADJUDICATION OF THE ISSUES INVOLVED IN THE ENDANGERED SPECIES ACT CLAIMS.

The Administrative Procedure Act ("APA"), 5 U.S.C §§ 701 to 706, governs judicial review of the ESA claims in this case. See, e.g., Wyoming Farm Bureau Federation v. Babbitt, 199 F.3d 1224, 1231 (10th Cir. 2000)(stating that the APA, 5 U.S.C. § 706, governs review of ESA claims involving administrative actions); Village of False Pass v. Clark, 733 F.2d 605, 609-10 (9th Cir. 1984)("Because ESA contains no internal standard of review, section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, governs review of the Secretary's actions."). In reviewing an agency decision under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**II.     A VOLUNTARY REMAND IS APPROPRIATE BECAUSE THE TENTH CIRCUIT
HAS INVALIDATED THE "BASELINE APPROACH" USED BY THE USFWS TO
ASSESS ECONOMIC IMPACTS OF CRITICAL HABITAT DESIGNATION.**

When it enacted the ESA, Congress found that "various species of fish, wildlife, and plants
in the United States have been rendered extinct as a consequence of economic growth and
development untempered by adequate concern and conservation, [and that] other species of fish,
wildlife, and plants have been so depleted in numbers that they are in danger of or threatened with
extinction."  16 U.S.C. § 1531(a)(1) and (2).  Two of the primary purposes of the ESA are "to
provide a means whereby the ecosystems upon which endangered species and threatened species
depend may be conserved, [and] to provide a program for the conservation of such endangered
species and threatened species."  Id. § 1531(b).

To accomplish the ESA's goals, Congress directed the Secretary of the Interior to create a
list of endangered species which are "in danger of extinction throughout all or a significant portion
of its range."  Id. §§ 1532(6), 1533(a)(1).  The ESA also provides for listing of threatened species,
defined as "any species which is likely to become an endangered species within the foreseeable future
throughout all or a significant portion of its range."  Id. §§ 1532(20), 1533(a)(1).  Pursuant to the
ESA, the Secretary  must make listing decisions "solely on the basis of the best scientific and
commercial data available[.]"  Id. § 1533(b)(1)(A).  The Secretary must not consider economic
factors in deciding whether to list a species as endangered or threatened.  See New Mexico Cattle
Growers Ass'n v. U.S. Fish and Wildlife Service, 248 F.3d at 1284-85.

"[T]o the maximum extent prudent and determinable," the Secretary must designate critical
habitat for any species listed as endangered or threatened.  16 U.S.C. § 1533(a)(3)(A).  The ESA
defines "critical habitat" as:

(i) the specific areas within the geographical area occupied by the species, at the time it is listed . . . , on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

(ii) specific areas outside the geographical area occupied by the species at the time it is listed . . . , upon a determination by the Secretary that such areas are essential for the conservation of the species.

Id. § 1532(5)(A).  The Secretary must designate critical habitat for listed species "on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." Id. § 1533(b)(2).  The ESA permits the Secretary to "exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned." Id.

In New Mexico Cattle Growers Ass'n. v. United States Fish and Wildlife Service, the USFWS listed the Southwestern Willow Flycatcher ("flycatcher") as endangered, but delayed the required critical habitat designation.  Later, pursuant to a court order, the USFWS issued its critical habitat designation for the flycatcher.  To conduct the required economic analysis, the USFWS used the "baseline approach" that only considered the economic impacts of the critical habitat designation and ignored the economic impacts that resulted from listing the species as endangered.  See id.  The Tenth Circuit held that the "baseline approach" adopted by the USFWS violated the ESA.  See id. at 1285. The Tenth Circuit reasoned that, while the ESA bars economic effects from consideration during the listing phase, Congress specifically intended that USFWS incorporate all economic impacts into the

critical habitat designation, regardless whether they occurred as a result of listing the species or designating critical habitat for that species.  See id.

All parties agree that the Tenth Circuit's decision requires a remand of this matter to the agency.  The Court agrees with the parties that promulgation of the Final Rule designating critical habitat for the spikedace and loach minnows occurred in violation of the ESA because the USFWS relied on the "baseline approach" that the Tenth Circuit subsequently invalidated.  Thus, the agency's action was not in accordance with law, and a remand is appropriate to allow the USFWS to re-designate critical habitat for the two fish species in a manner consistent with the Tenth Circuit's New Mexico Cattle Growers Ass'n decision.

## III.  THE TENTH CIRCUIT DECISION INVALIDATING THE "BASELINE APPROACH" APPLIES TO ALL SEVEN COMPLEXES DESIGNATED UNDER THE FINAL RULE, INCLUDING COMPLEX 3, AND REQUIRES COMPLETE VACATUR OF THE FINAL RULE.

### A.  THE APA AND CASE LAW FROM THE SUPREME COURT OF THE UNITED STATES AND FROM THE TENTH CIRCUIT MAY MANDATE COMPLETE VACATUR OF THE EXISTING FINAL RULE.

A number of legal authorities indicate that this Court lacks discretion to consider less than complete vacatur of the existing Final Rule.  The first is the APA, which governs the ESA claim in this case.  The APA employs language that limits judicial review of agency action to ensure that courts do not usurp responsibilities delegated to agencies by Congress by crafting their own rules. The APA section governing this action states that "reviewing court[s] shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A)(emphasis added).  The statute's plain language suggests that, if a court finds an agency action to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law," the court must set that agency action aside. The statute contains the word "shall," which the Tenth Circuit has interpreted as mandatory. See Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir. 1999)("The Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.").[2]

Supreme Court case law supports the conclusion that the Court should vacate the critical habitat designation. The Supreme Court has stated:

> We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded . . . for further consideration."

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 549 (1978)(quoting Camp v. Pitts, 411 U.S. 138, 143 (1973)). The Court has found that the USFWS' Final Rule is not sustainable on the administrative record because it relies upon an invalid economic analysis. Thus, the Supreme Court's statement in Vermont Yankee indicates that the Court must vacate that Final Rule and remand the matter to the agency.

Tenth Circuit precedent also supports vacatur of the Final Rule. In the same case in which it invalided the USFWS' "baseline approach," the Tenth Circuit vacated the critical habitat designation at issue. See New Mexico Cattle Growers Ass'n v. United State Fish and Wildlife Service, 248 F.3d at 1285 ("The flycatcher CHD is thus set aside and the FWS is instructed to issue a new flycatcher CHD in compliance with this opinion as required by the ESA."). It is instructive that

---

[2] In Babbitt, the Tenth Circuit was interpreting the same statute, although a different section, that is at issue in this case. The portion containing the mandatory language "shall," however, was identical.

the very decision upon which the parties rely includes a complete vacatur of the invalid rule.

Finally, consideration of the ESA also suggests that this Court should vacate the Final Rule pending the agency's determination on remand. The ESA states that the Secretary of the Interior must designate critical habitat for listed species only "<u>after</u> taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2)(emphasis added)). Pursuant to the Tenth Circuit's decision in <u>New Mexico Cattle Growers Ass'n.</u>, this consideration must include all relevant factors, not only those above the baseline of impacts from the listing of the species. The USFWS has not yet engaged in this required analysis for the spikedace and loach minnow critical habitat. Thus, the existing Final Rule designating critical habitat with respect to the seven complexes, including Complex 3, did not adequately consider the economic impact of critical habitat designation as the ESA requires. An exception to complete vacatur of the existing Final Rule, one that would leave Complex 3 in place as critical habitat, would contradict the ESA's plain language.

### B.   EVEN IF VACATUR IS NOT MANDATORY, THE COURT FINDS VACATUR TO BE APPROPRIATE UNDER THESE CIRCUMSTANCES.

The Court believes that it has set forth adequate authority to support its decision to vacate the rule on the sole basis of its invalid underlying economic analysis. Even if the Court were to conclude, however, that it is not required to vacate the Final Rule in its entirety, it would still exercise its discretion to do so. Some courts have stated that "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" <u>Allied-Signal, Inc. v. United States Nuclear Regulatory Com'n</u>, 988 F.2d 146, 150-51 (D.C. Cir.

1993)(quoting <u>International Union, UMW v. FMSHA</u>, 920 F.2d 960, 967 (D.C. Cir.1990)).  In this case, the deficiency of the Final Rule is admitted, and there is no doubt that the agency chose incorrectly when applying the "baseline approach" to its economic analysis.

Other courts have recognized that the use of the "baseline approach" results in substantive flaws to the critical habitat designation, thereby warranting vacatur.  <u>See</u> <u>New Mexico Cattle Growers Ass'n v. Norton</u>, Civ. No. 02-0461 LH/RHS, Memorandum Opinion at 5 (D.N.M., filed September 30, 2003)(" As has been held by other courts, this Court finds that use of the baseline approach results in substantive, not merely procedural, flaws to the critical habitat designation, thereby warranting vacatur."); <u>Building Industry Legal Defense Foundation v. Norton</u>, 231 F. Supp. 2d 100, 105 (D.D.C. 2002)("[T]he erroneous impact analyses in this case may have contributed to incorrect critical habitat designations.  FWS's uses of the baseline approach thus constitute serious substantive errors, not mere procedural flaws, and hence warrant vacatur."); <u>National Ass'n of Home Builders v. Norton</u>, 2001 WL 1876349 (D. Ariz. 2001)( "FWS' failure to comply with the statutory requirements regarding critical habitat designation is more than a minor procedural error.  Its failure to follow the mandates of the statute calls the very substance of the critical habitat designation into question.").

The Federal Defendants acknowledge that there is authority to support the conclusion that the Court does not have discretion to weigh the equities involved in this case, but they argue that the courts have backed away from that position in subsequent cases.  The Federal Defendants make this argument within the context of their revised request for relief, <u>i.e.</u>, postponing the vacatur and enjoining implementation of the rule.  The Federal Defendants cite <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 542-44 (1987), for the proposition that the courts' equitable discretion is not foreclosed absent a clear statement of congressional intent to do so.  They also point to <u>Weinberger</u>

-11-

v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982), for the proposition that, after finding a violation

of an environmental statute, district courts are neither required to automatically issue an injunction

nor to reflexively issue accelerated timetables in a given case.

Both Weinberger and Amoco involved suits for alleged violations of environmental statutes.

In Weinberger, 456 U.S. at 307, the United States Navy was sued for discharging pollutants into the

sea without a permit required by the Federal Water Pollution Control Act ("FWPCA").  The Supreme

Court held that the FWPCA did not foreclose district courts' equitable discretion.  See id. at 320.

The Court distinguished Weinberger from TVA v. Hill, 437 U.S. 153 (1978), in which the Court held

that an imminent violation of the EPA required injunctive relief.  The Court reasoned that Weinberger

differed from TVA where Congress had foreclosed judicial discretion when endangered species were

involved.  See id. at 313 ("Unless a statute in so many words, or by a necessary and inescapable

inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be

recognized and applied.")(citations omitted).  It further reasoned the FWPCA provided other means

for ensuring compliance that included fines and criminal penalties.  See id. at 314.

In Amoco, 480 U.S. at 535, Alaskan native villages brought an action to enjoin the Secretary

of the Interior's sale of oil and gas leases for federally owned lands in the outer continental shelf of

Alaska.  The Supreme Court held that the United States Court of Appeals for the Ninth Circuit erred

when it concluded that the district court lacked traditional equitable discretion in enforcing a statutory

provision.  See id. at 544-46.  The Supreme Court reasoned that Amoco could not be distinguished

from Weinberger and reversed the Ninth Circuit's grant of a preliminary injunction.  See id.  The

Supreme Court acknowledged the fundamental principle that an equitable remedy does not issue as

a matter of course, and that the court must balance the competing claims of injury and consider the

-12-

effect on each party of the granting of an injunction.  See id. at 542.

This case differs from both Weinberger and Amoco, where actors other than the rule making agency were sued for alleged violations of environmental statutes.  Here, USFWS, the agency charged with listing threatened and endangered species and designating critical habitat for those listed species under the ESA, violated the Act by using an unlawful economic analysis in its critical habitat designation for the two fish species.  Furthermore, the Court does not view this case as one properly involving injunctive relief.  The issue before the Court is whether to vacate an invalid rule, not whether to enjoin the rule's implementation.  Thus, the reasoning from cases for injunctive relief is neither instructive nor controlling in this case.

The Center for Biological Diversity raises another argument in favor of the Court's exercise of discretion.  The CBD points to language in the ESA stating that the Secretary has discretion to consider whether the threat to the listed species exceeds any significant economic costs discovered in the required economic analysis.  The ESA provides that the Secretary "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned."  16 U.S.C. § 1533(b)(2).  CBD contends that this language grants the Secretary of the Interior discretion to ignore the economic costs if the Secretary concludes that failure to designate critical habitat would lead to extinction of the listed species.  Thus, the Center argues that the Court should not vacate the rule because the Secretary may choose, in an exercise of discretion, to ignore the results of the economic analysis and may leave the critical habitat designation largely unchanged.

-13-

CBD further argues that the policy behind the ESA warrants leaving the existing Final Rule in place until USFWS develops and promulgates new proposed and final rules designating critical habitat for the two listed species. It points to the Supreme Court's recognition that Congress has made clear that "the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'" Tennessee Valley Authority v. Hill, 437 U.S. at 174. It further argues that "[t]he plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, whatever the cost." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 699 (1995). Thus, the CBD argues that the Court should not vacate such an important rule, leaving the species unprotected, especially when the portions of the rule at issue may remain unchanged even after a proper economic analysis. See Natural Resources Defense Council v. Department of the Interior, 275 F. Supp. 2d 1136, 1143-49 (C.D. Cal. 2002)(refusing to vacate rule designating critical habitat even after finding substantive flaws in economic analysis, in part because the court could not predict whether a new economic analysis would affect the existing designation).

The Court agrees with the CBD that the Secretary maintains discretion to designate critical habitat in the face of significant economic costs when failure to do so threatens extinction of the listed species. But recognizing the Secretary's discretion, as well as the Supreme Court's conclusion that Congress has adopted a policy of "institutionalized caution" with respect to species listed under the ESA, does not convince the Court that it should discount the ESA's plain language that specifically states that the USFWS must designate critical habitat after considering the economic impacts of such a designation. The undisputed fact in this case is that such an economic analysis has not yet occurred. The rule is invalid. The APA and Supreme Court and Tenth Circuit precedent require vacatur

pending a remand.

## IV.   THE COURT DECLINES TO IMPOSE A REMAND SCHEDULE.

The Federal Defendants acknowledge that there is no legal requirement for the Court to set a remand schedule.  In Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999), the plaintiffs sued the USFWS because it had failed to designate critical habitat for the Rio Grande silvery minnow after listing the species as endangered.  The Tenth Circuit held that "Congress, through 5 U.S.C. § 706, has explicitly removed from the courts the traditional equity balancing that ordinarily attends decisions whether to issue injunctions."  Id. at 1192.  Thus, the Tenth Circuit concluded that the district court erred in considering the agency's budgetary constraints in setting a time schedule different from that required by statute.  It remanded the case "to the district court with instructions to order the Secretary to issue a final critical habitat designation for the silvery minnow as soon as possible, without regard to the Secretary's other priorities under the ESA."  Id. at 1193.

The Federal Defendants distinguish Forest Guardians, where § 706(1) of the APA applied, from this case, arguing that the Plaintiffs' action challenges the existing critical habitat designation that the USFWS made, rather than an agency inaction, and thus falls under § 706(2) of the APA.  The Court recognizes this distinction, but disagrees with the Federal Defendants' contention that the distinction allows the Court to consider "the Secretary's other priorities" or engage in the "traditional equity balancing" that the Tenth Circuit foreclosed in cases like Forest Guardians v. Babbitt involving ESA claims arising from administrative actions.

Here, complete vacatur of the existing Final Rule leaves the spikedace and loach minnow in a situation that closely resembles Forest Guardians v. Babbitt, where the Secretary had failed to designate critical habitat for the silvery minnow.  In that case, the Tenth Circuit "compel[led] agency

action unlawfully withheld" because it recognized that the ESA requires the Secretary to designate

critical habitat for listed species.  5 U.S.C. § 706(1).  In this case, the Court has decided to vacate

completely the existing Final Rule because it violates the ESA.  Complete vacatur leaves the

spikedace and loach minnow without critical habitat as required by the ESA.  Given the lack of

critical habitat for the spikedace and loach minnow, consideration by the Court of USFWS' budget

difficulties would contradict the language of the ESA, as well as the controlling precedent established

in Forest Guardians v. Babbitt.  Thus, the Court declines to set a schedule for remand.  The ESA

contains deadlines regarding critical habitat designation, and this Court will not deviate from that

statutory language to impose a different or longer time frame.

   **IT IS ORDERED** that the existing Final Rule is vacated and the matter is remanded the

United States Fish and Wildlife Service to develop and promulgate proposed and final rules

designating critical habitat for the spikedace and loach minnow in compliance with the Endangered

Species Act.

_____
UNITED STATES DISTRICT JUDGE

-16-

*Counsel:*

Lee E. Peters
Hubert & Hernandez, P.A.
Las Cruces, New Mexico

- and -

Karen Budd-Falen
Brandon L. Jensen
Vicky Demshar
Budd-Falen Law Offices, P.C.
Cheyenne, Wyoming

    *Attorneys for Plaintiffs*


Andrew A. Smith
United States Department of Justice
Environmental & Natural Resources Division

    *Attorney for Federal Defendants*


Geoffrey Hickcox
Kenna & Hickcox, P.C.
Durango, Colorado

    *Attorney for Defendant-Intervenor*